LAW OFFICES

# LEVY, EHRLICH & PETRIELLO

A PROFESSIONAL CORPORATION

60 PARK PLACE

SUITE 1016

NEWARK, N.J. 07102

———

(973) 643-0040

FAX (973) 596-1781

WEBSITE: www.lep-lawyers.com

IRA A. LEVY*
ALAN EHRLICH*
JOHN J. PETRIELLO**
BRUCE E. GUDIN**
JEFFREY W. PLAZA**

STEPHEN F. CEA***
DEREK D. REED**
ANNE P. WARD**
SAM D. HAN**
ANDREW B. SOBEL**

*N.J., N.Y. & D.C. BARS
**N.J. & N.Y. BARS
***N.J. & PA. BARS

NEW YORK OFFICE
555 FIFTH AVENUE
14TH FLOOR
NEW YORK, N.Y. 10017
(212) 643-2503

———

REPLY TO NEWARK OFFICE

July 14, 2008

**Via ECF**
Honorable Laura Taylor Swain
Judge, United States District Court
Southern District of New York
Daniel P Moynihan United States Court House
500 Pearl Street
New York, New York 10007-1312

Re:  **Mark Petruzzi v. Zensar TD, LLC and DJMMB, LLC**
**Civil Action No. 08-5726**

Dear Judge Swain:

This office represents Plaintiff Mark Petruzzi. I am writing to clarify and further explain the allegations of the Complaint which are relevant to the subject matter jurisdiction of this Court, as requested by Your Honor.

Subject matter jurisdiction is based upon diversity jurisdiction pursuant to 28 U.S.C. 1332. The parties are residents of different states. Plaintiff is a resident of the State of New Jersey, Complaint, ¶ 1. Defendant Zensar, TD, LLC is a Delaware limited company with its principal place of business located in Illinois, Complaint ¶ 2. Defendant DJMMB LLC is a Delaware limited liability corporation with its principal place of business in Massachusetts, Complaint, ¶ 3.

Plaintiff is seeking damages in excess of $75,000. Plaintiff alleges he was wrongfully terminated from his employment with Zensar TD, L.L.C. As a result, he has suffered, and will suffer, the following damages:

LEVY, EHRLICH & PETRIELLO
A Professional Corporation

July 14, 2008
Page – 2 –


A.    Payment of $20,083.57 due him as a "2008 Guaranteed Deferred Payment" pursuant to the terms of a "Compensation Agreement and Release dated February, 2007" (hereinafter "Compensation Agreement". A copy of the Compensation Agreement is attached as Exhibit A. Plaintiff had to be an employee of Zensar on June 15 2008 to receive this compensation. Complaint, ¶16.  As a result of his wrongful termination, Plaintiff has been damaged by the loss of this payment.

B.    Payments totaling $136,973.24 are due to Plaintiff under the terms of the Compensation Agreement if Plaintiff is an employee on December 31, 2008 Complaint, ¶ 18 and 22.  The Complaint could have been more specific on these damages.  This amount is the total of two separate payments due pursuant to the terms of the Compensation Agreement.
Plaintiff is due the amount of $38,156.98 as a 2009 Guaranteed Deferred Payment, but only if he is an employee of Zensar on December 31, 2008. This amount and the necessary date of employment is set forth in Exhibit D to the Compensation Agreement.  Plaintiff is also due the amount of $98,816.25 as a "2009 Guaranteed Deferred Payment" but only if he is an employee of Zensar on December 31, 2008. This amount and the necessary date is specified in Exhibit E of the Compensation Agreement.
As a result of Plaintiff's wrongful termination, Plaintiff will be deprived of these payments.

C.    A potential "2009 Contingent Payment" in the maximum amount of $35,477.09.  Complaint, § 21.  Plaintiff has to be an employee of Zensar on December 31, 2008 to be eligible for this payment. Complaint, ¶22.
As a result of Plaintiff's wrongful termination, Plaintiff will be deprived of this potential payment.

D.    Base salary in the amount of $142,000 due Plaintiff for the period from February 1, 2008 through January 31, 2009 pursuant to the terms of an Employment Agreement between

LEVY, EHRLICH & PETRIELLO
A Professional Corporation

July 14, 2008
Page - 3 -

Plaintiff and Zensar. Complaint, ¶26-29. By reason of Plaintiff's wrongful termination, Plaintiff will be deprived of this salary.

E.   A bonus payment in the amount of $43,000 for due Plaintiff for the calendar year 2008. Complaint, ¶ 30. By reason of Plaintiff's wrongful termination, Plaintiff will be deprived of this payment.

Plaintiff therefore seeks damages totaling $377,533.90, plus interests and costs.

Plaintiff respectfully submits it has alleged sufficient facts to sustain diversity jurisdiction pursuant to 28 U.S.C. 1332.

In addition, Zensar and Plaintiff have agreed the Employment Agreement shall be construed under New York law; that any action between Plaintiff and Zensar shall be venued in the State of New York; and that if any action was instituted in state court, then subject to applicable law, Plaintiff would not object to removal of the action to "any federal court located" in the State of New York. A copy of the relevant pages of the Employment Agreement is attached as Exhibit B. Please see Paragraph IX, subparagraph F.

Very truly yours,

John J. Petriello
Direct Dial: (973) 854-6700
E-Mail: john@lep-lawyers.com

cc: Jon Cohen, Esq. (via fax)
    DJMMB, Inc.
    Mark Petruzzi

# EXHIBIT A

# COMPENSATION AGREEMENT AND RELEASE

This Compensation Agreement and Release (the "Agreement") is effective this ___ day of _____ 2007 (the "Effective Date"), by and between SOA Software, Inc., a Delaware corporation ("SOA"), DJMMB, LLC ("DJMMB LLC") and the employees who are listed on the signature page to this Agreement (referred to herein individually as a "Key Employee" and collectively as "Key Employees"). SOA, DJMMB LLC and the Key Employees shall be referred to herein collectively as the "Parties."

## RECITALS

WHEREAS, SOA is the sole member of ThoughtDigital, LLC, a Delaware limited liability company ("ThoughtDigital");

WHEREAS, certain assets and liabilities of ThoughtDigital have been contributed to Zensar TD, LLC , a Delaware limited liability company (the "Company"), a new limited liability company in which SOA and ThoughtDigital hold 100% of the membership interests;

WHEREAS, SOA and ThoughtDigital are parties to that certain Membership Interest Purchase Agreement dated February __, 2007 (the "Purchase Agreement"), whereby SOA and ThoughtDigital are selling all of their membership interests in the Company to Zensar Technologies, Inc., a California corporation ("Zensar");

WHEREAS, Didier Stevens, Joseph Ung, Mike Crawford and Mark Petruzzi (each a "Equity Employee" and collectively the "Equity Employees") previously held membership interests in ThoughtDigital which they sold to SOA pursuant to the Membership Purchase Agreement dated as of January 1, 2005 by and between the Equity Employees and SOA (the "SOA Purchase");

WHEREAS, each of the Equity Employees hold membership interests in DJMMB LLC and have executed the DJMMB LLC Operating Agreement in the form attached hereto as Exhibit B (the "Operating Agreement");

WHEREAS, the payment by Zensar of a portion of the purchase price to SOA and ThoughtDigital under the Purchase Agreement is contingent upon the attainment of certain performance targets;

WHEREAS, Exhibit A includes a list of each employee of ThoughtDigital other than the Key Employees (the "Employees") that will be receiving certain consideration in connection with the transactions contemplated by the Purchase Agreement;

WHEREAS, in consideration for the releases set forth in this Agreement and as a reward for their performance of services to ThoughtDigital, SOA and ThoughtDigital are providing the bonus payments set forth in this Agreement;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and

1

conditions herein contained, as well as other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    <u>Closing Payments.</u>

(a)    Upon receipt by SOA of the Upfront Payment (as defined in the Purchase Agreement) in connection with the closing of the transactions contemplated by the Purchase Agreement (the "<u>Closing</u>"), the Key Employees and the Employees shall be entitled to receive an aggregate amount of $3,806,000 (the "<u>Closing Payment</u>") from the Upfront Payment received by SOA and ThoughtDigital pursuant to the Purchase Agreement, less amounts withheld to satisfy the Tax Withholding (as defined in Section 10 below).   The Closing Payment reflects a reduction of $185,000 (the "<u>Escrow Adjustment Amount</u>")  for the portion of the Upfront Payment contributed to an escrow fund by Zensar for indemnification claims under the Purchase Agreement.  In order to facilitate the payment of the Closing Payment and the other payments required pursuant to this Agreement, SOA shall establish an escrow account (the "<u>Escrow Account</u>") pursuant to an escrow agreement in the form attached hereto as <u>Exhibit C</u>. The fees to establish and maintain the Escrow Account shall be paid for by DJMMB LLC. SOA shall receive all interest and other earnings from the funds deposited in the Escrow Account. The Closing Payment shall be made as set forth below.

**Closing Payments:**

(i)    An amount equal to $1,969,788.08 of the Closing Payment shall be paid to DJMMB LLC by SOA within five (5) business days after receipt of the Upfront Payment from Zensar for benefit of the Equity Employees and shall be allocated to the Equity Employees as set forth on <u>Exhibit D</u>.

(ii)    An amount equal to $1,424,278.16 of the Closing Payment shall be paid by SOA to the Key Employees, after deduction of the Tax Withholding with respect to such payment.  Within five (5) business days after receipt of the Upfront Payment from Zensar, SOA shall pay to each of the Key Employees the amounts set forth on Exhibit E with respect to the Closing Payment to such Key Employees less the amounts required for Tax Withholding.

(iii)    An amount equal to $411,933.76 of the Closing Payment shall be paid by SOA to the  Employees, after deduction of the Tax Withholding with respect to such payment. DJMMB LLC shall notify SOA whether or not each Employee is still an employee of the Company as of each the dates set forth on Exhibit F with respect to the Closing Payment. Within five business (5) days after receipt of the Upfront Payment from Zensar SOA shall pay to the Employees one-half of the amounts  indicated on Exhibit F with respect to the Closing Payment for such Employees less the amounts required for Tax Withholding, provided that if an Employee an Employee shall not be entitled to such Employee's payment unless the Employee is not an employee of the Company as of a each date set forth on Exhibit F on which a Closing Payment is due.with respect to the Closing Payment such payment shall be forfeited and reallocated as set forth in 2(i) below.  The failure of one Employee to remain as an employee of the Company shall not affect the right of any other employee to receive a payment.    The

2

determination of DJMMB LLC on the employment status of any Employee shall be binding on the parties.

**Net Working Capital Adjustment:**

(b)     SOA shall notify DJMMB LLC of the final determination of the amount of the Net Working Capital adjustment pursuant to the terms of the Purchase Agreement. If such adjustment results in SOA receiving from Zensar additional cash payments, SOA shall within five (5) business days of receipt of such payments, pay to DJMMB LLC, the Equity Employees and Key Employees an aggregate amount equal to 16.5% of such cash payments received (the "TD NWC Payment") as described below. Notwithstanding the foregoing, no such payments shall be made until the Net Working Capital exceeds $2,633,209.61. If such adjustment results in SOA being required to pay to Zensar additional cash payments, if the amount required to be paid to Zensar are less than or equal to $21,979.58, DJMMB LLC shall within five (5) business days of receipt of notice from SOA of such payment to be made to Zensar, pay to SOA all amounts that SOA is required to pay to Zensar and if the amount required to be paid to Zensar is greater than $21,979.58, DJMMB LLC shall pay to SOA an amount equal to 16.5% of the amounts SOA is required to pay to Zensar plus $21,979.58. Additional cash payments received by SOA, if any, pursuant to this section, shall be paid out as follows:

(i)     An amount equal to 51.7548% of the TD NWC Payment shall be paid to DJMMB LLC  for benefit of the Equity Employees and shall be allocated to the Equity Employees as set forth on Exhibit D .

(ii)     An amount equal to 37.4219% of the TD NWC Payment shall be paid to the Key Employees. Such amounts shall be paid out to the Key Employees after deduction of the Tax Withholding with respect to such payment. Within five business days of receipt by SOA of the TD NWD Payment, SOA shall pay the applicable percentage of the TD NWC Payment allocated as set forth on Exhibit E, less the amounts required for Tax Withholding, to the Key Employees.

(iii)     An amount equal to 10.8233% of the TD NWC Payment shall be paid to the Employees.  Such amounts shall be paid out to the Employees after deduction of the Tax Withholding with respect to such payment, provided that each such Employee is an employee of the Company as of the date set forth on Exhibit F with respect to the TD NWC Payment.  DJMMB LLC shall notify SOA whether or not each Employee is still an employee of the Company as of such date.  Within five business days of receipt of such information, SOA shall  pay the applicable percentage of the TD NWC Payment allocated  as set forth on Exhibit F net of Tax Withholding to the Employees employed by the Company as of the applicable date. If an Employee is not an employee of the Company as of a date set forth on Exhibit F on which a TD NWC Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.  The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties.

**Escrow Adjustment Amounts:**

3

(c)     Within five (5) business days after each receipt by SOA and ThoughtDigital of any funds released from the Joint Escrow Account (as defined in the Purchase Agreement), an amount equal to 16.5% of the funds released on such date from the Joint Escrow Amount (the "TD Escrow Payment") shall be shall be paid out as follows:

(i)     An amount equal to 54.7939% of the TD Escrow Payment shall be paid to DJMMB LLC for benefit of the Equity Employees and shall be allocated to the Equity Employees as set forth on Exhibit D.  Such amounts shall be paid out to the Equity Employees provided that each such Equity Employee is an employee of the Company as of the date set forth on Exhibit D with respect to the TD Escrow Payment.  DJMMB LLC shall notify SOA whether or not each Equity Employee is still an employee of the Company as of such date.  Within five business days of receipt of such information, SOA shall  pay to DJMMB LLC the applicable percentage of the TD Escrow Payment set forth on Exhibit D with respect to each Equity Employee employed by the Company as of the applicable date. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties.  If an Equity Employee is not an employee of the Company as of a date set forth on Exhibit D on which a TD Escrow Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.

(ii)     An amount equal to 37.7542% of the TD Escrow Payment shall be paid to the Key Employees after deduction of the Tax Withholding with respect to such payment, provided that each such Key Employee is an employee of the Company as of the date set forth on Exhibit E with respect to the TD Escrow Payment.  DJMMB LLC shall notify SOA whether or not each Key Employee was an employee of the Company as of the date set forth on Exhibit E. Within five business days of receipt of such information, SOA shall  pay to the Key Employees employed by the Company as of the applicable date the applicable percentage of the TD Escrow Payment allocated as set forth on Exhibit E, less the amounts required for Tax Withholding. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties.  If a Key Employee is not an employee of the Company as of a date set forth on Exhibit E on which a TD Escrow Payment is due, such payment shall be forfeited and reallocated as set forth in 2(ii) below.

(iii)     An amount equal to 7.4519% of the TD Escrow Payment shall be paid to the Employees after deduction of the Tax Withholding with respect to such payment provided that each such Employee is an employee of the Company as of the date set forth on Exhibit F with respect to the TD Escrow Payment.  DJMMB LLC shall notify SOA whether or not each Employee is still an employee of the Company as of such date.  Within five business days of receipt of such information, SOA shall pay the applicable percentage of the TD Escrow Payment allocated as set forth on Exhibit F less the amounts required for Tax Withholding to the Employees employed by the Company as of the applicable date. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties.  If an Employee is not an employee of the Company as of a date set forth on Exhibit F on which a TD Escrow Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.

2.    <u>Deferred Payment</u>.

(a)    The Key Employees and Employees shall be entitled to receive as additional consideration the Deferred Purchase Price (as defined in the Purchase Agreement) received by SOA and ThoughtDigital pursuant to the Purchase Agreement (the "<u>Deferred Payment</u>") less any amounts withheld to satisfy Tax Withholding obligations. The Deferred Payment shall be made in two installments, with the first payment in 2008 (the "<u>2008 Deferred Payment</u>") and the second payment in 2009 (the "<u>2009 Deferred Payment</u>") as set forth in Section 2(c) below.

(b)    Within five (5) business days after receipt  by SOA of the Upfront Payment, SOA shall contribute an aggregate of $1,850,000 of the Upfront Payment  (the "<u>Guaranteed Payment</u>") into the Escrow Account.

**2008 Deferred Guaranteed Payment:**

(c)    On January 31, 2008, the escrow agent holding the Escrow Account (the "<u>Escrow Agent</u>") shall release $770,000 (the "<u>2008 Deferred Guaranteed Payment</u>") from the Escrow Account as set forth below.

(i)    The Escrow Agent shall pay to DJMMB LLC for benefit of the Equity Employees the amounts as set forth on Exhibit D provided that each Equity Employee is still an employee of the Company on the date specified in Exhibit D with respect to the 2008 Deferred Guaranteed Payment.    DJMMB LLC shall notify SOA whether or not each Equity Employee is still an employee of the Company as of such date.  Within five business days of receipt of such information, SOA shall instruct the Escrow Agent to pay to DJMMB LLC the amounts set forth on Exhibit D with respect to each Equity Employee employed by the Company as of the applicable date. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties.  <u>If an Equity Employee is not an employee of the Company as of a date set forth on Exhibit D on which a 2008 Deferred Guaranteed Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.</u>

(ii)    The Escrow Agent shall pay to the Key Employees the amounts set forth on Exhibit E after deduction of the Tax Withholding with respect to such payment, provided that each such Key Employee is an employee of the Company as of each of the date set forth on Exhibit E with respect to the 2008 Deferred Guaranteed Payment.  DJMMB LLC shall notify SOA whether or not each Key Employee is still an employee of the Company as of such date.  Within five business days of receipt of such information, SOA shall instruct the Escrow Agent to pay the amounts set forth on Exhibit E less the amounts required for Tax Withholding to the Key Employees employed by the Company as of the applicable date, and to pay to SOA the amounts required for Tax Withholding. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties.  <u>If a Key Employee is not an employee of the Company as of a date set forth on Exhibit E on which a 2008 Deferred Guaranteed Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i)</u>

below.

(iii)    The Escrow Agent shall pay to the Employees the amounts as set forth on Exhibit F, after deduction of the Tax Withholding with respect to such payment, provided that each such Employee is an employee of the Company as of the date set forth in Exhibit F with respect to the 2008 Deferred Guaranteed Payment.  DJMMB LLC shall notify SOA whether or not each Employee is still an employee of the Company as of the date set forth in Exhibit F.  Within five (5) business days of receipt of such information, the Escrow Agent shall pay out the amounts set forth on Exhibit F less the amounts required for Tax Withholding to the Employees employed by the Company as of the applicable date, and to pay to SOA the amounts required for Tax Withholding . The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties. If an Employee is not an employee of the Company as of a date set forth on Exhibit F on which a 2008 Deferred Guaranteed Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.

**2008 Contingent Payment:**

(d)    To the extent that the first installment of the Deferred Purchase Price received by SOA is greater than $770,000, SOA shall pay  within five (5) business days after receipt by SOA of the 2008 Deferred Payment any amounts received in excess of $770,000 (the "2008 Contingent Payment").

(i)    An amount equal to 85.5116% of the 2008 Contingent Payment shall be paid to the Key Employees as described in this Section 2(d)(i).   Such amounts shall be paid  to the Key Employees in their pro-rata shares as set forth on Exhibit E after deduction of the Tax Withholding  with respect to such payment provided that each such Key Employee is an employee of the Company as of each of the date set forth on Exhibit E with respect to the 2008 Contingent Payment.  DJMMB LLC shall notify SOA whether or not each Key Employee is still an employee of the Company as of such date.   Within five business days of receipt of such information, SOA shall pay to the Key Employees employed as of the applicable date their pro-rata shares set forth on Exhibit E less the amounts required for Tax Withholding. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties.  If a Key Employee is not an employee of the Company as of a date set forth on Exhibit E on which a 2008 Contingent Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.

(ii)    An amount equal to 14.4884% of the 2008 Contingent Payment shall be released to the Employees as described in this Section 2(d)(ii).   Such amounts shall be paid out to the Employees their pro-rata shares as set forth on Exhibit F after deduction of the Tax Withholding  with respect to such payment provided that each such Employee is an employee of the Company as of the date set forth in Exhibit F with respect to the 2008 Contingent Payment.  DJMMB LLC shall notify SOA whether or not each Employee is still an employee of the Company as of such date.  Within five (5) business days of  receipt of such

6

information, SOA shall  pay to the Employees employed as of the applicable date their pro-rata shares set forth on Exhibit F less the amounts required for Tax Withholding. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties. If an Employee is not an employee of the Company as of a date set forth on Exhibit F on which a 2008 Contingent Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.

**2009 Guaranteed Deferred Payment:**

(e)     On January 31, 2009, the Escrow Agent shall release $1,140,000 (the "2009 Guaranteed Deferred Payment") from the Escrow Account as set forth below.

(i)     The Escrow Agent shall pay to DJMMB LLC for benefit of the Equity Employees the amounts as set forth on Exhibit D, provided such Equity  Employee is still an employee of the Company as of the date set forth on Exhibit D with respect to the 2009 Guaranteed Deferred Payment.   DJMMB LLC shall notify SOA whether or not each Key Employee is still an employee of the Company as of such date.  Within five business days of receipt of such information, SOA shall instruct the Escrow Agent to pay out the amounts set forth on Exhibit D with respect to each Equity Employee employed by the Company as of the applicable date. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties. If an Equity Employee is not an employee of the Company as of a date set forth on Exhibit D on which a 2009 Deferred Guaranteed Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.

(ii)     The Escrow Agent shall pay to the Key Employees the amounts set forth on Exhibit E after deduction of the Tax Withholding with respect to such payment, provided that each such Key Employee is an employee of the Company as of each of the date set forth on Exhibit E with respect to the 2009 Guaranteed Deferred Payment  DJMMB LLC shall notify SOA whether or not each Key Employee is still an employee of the Company as of such date.  Within five business days of receipt of such information, SOA shall instruct the Escrow Agent to pay the amounts set forth on Exhibit E less the amounts required for Tax Withholding to the Key Employees employed by the Company as of the applicable date, and to pay to SOA the amounts required for Tax Withholding. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties. If a Key Employee is not an employee of the Company as of a date set forth on Exhibit E on which a 2009 Deferred Guaranteed Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.

(iii)     The Escrow Agent shall pay to the Employees the amounts as set forth on Exhibit F, provided that each such Employee is an employee of the Company as of the date set forth in Exhibit F with respect to the 2009 Guaranteed Deferred Payment.   DJMMB LLC shall notify SOA whether or not each Employee is still an employee of the Company as of such date.  Within five (5) business days of receipt of such information, the Escrow Agent shall

7

pay out the amounts set forth on Exhibit F less the amounts required for Tax Withholding to the Employees employed by the Company as of the applicable date, and to pay to SOA the amounts required for Tax Withholding. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties. If an Employee is not an employee of the Company as of a date set forth on Exhibit F on which a 2009 Deferred Guaranteed Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below

**2009 Contingent Deferred Payment:**

(f)      To the extent that the 2009 Deferred Payment received by SOA is greater than $1,140,000, SOA shall pay within five (5) business days after receipt by SOA of the 2009 Deferred Payment amounts received in excess of $1,140,000, (the "2009 Contingent Payment") as set forth below.

(i)      An amount equal to 85.5116% of the 2009 Contingent Payment in the Escrow Account shall be released to the Key Employees as described in this Section 2(f)(i). Such amounts shall be paid to the Key Employees in their pro-rata shares as set forth on Exhibit E after deduction of the Tax Withholding with respect to such payment provided that each such Key Employee is an employee of the Company as of each of the date set forth on Exhibit E with respect to the 2009 Contingent Payment. DJMMB LLC shall notify SOA whether or not each Key Employee is still an employee of the Company as of such date. Within five business days of receipt of such information, SOA shall pay to the Key Employees employed as of the applicable date their pro-rata shares set forth on Exhibit E less the amounts required for Tax Withholding. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties. If a Key Employee is not an employee of the Company as of a date set forth on Exhibit E on which a 2009 Contingent Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.

(ii)      An amount equal to 14.4884% of the 2009 Contingent Payment in the Escrow Account shall be released to the Employees as described in this Section 2(f)(ii). Such amounts shall be paid out to the Employees their pro-rata shares as set forth on Exhibit F after deduction of the Tax Withholding with respect to such payment provided that each such Employee is an employee of the Company as of the date set forth in Exhibit F with respect to the 2009 Contingent Payment. DJMMB LLC shall notify SOA whether or not each Employee is still an employee of the Company as of such date. Within five (5) business days of receipt of such information, SOA shall pay to the Employees employed as of the applicable date their pro-rata shares set forth on Exhibit F less the amounts required for Tax Withholding. The determination of DJMMB LLC on the employment status of any employee shall be binding on the parties. If an Employee is not an employee of the Company as of a date set forth on Exhibit F on which a 2008 Contingent Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.

8

**AR Payment:**

      (g)    Within five (5) business days after receipt by SOA or ThoughtDigital after the Closing of any amounts from Zensar in connection with the DeAngelo Brothers accounts receivable in existence at February 15, 2007, SOA shall pay all such amounts received prior to August 31, 2007 to the Key Employees and Employees as described below (the "AR Payment").

      (i)    An amount equal to 44.0994% of the AR Payment shall be paid to the Key Employees as described in this Section 2(g)(ii). Such amounts shall be paid to the Key Employees in their pro-rata shares as set forth on Exhibit E after deduction of the Tax Withholding with respect to such payment provided that each such Employee is an employee of the Company as of the date set forth on Exhibit E with respect to the AR Payment. DJMMB LLC shall notify SOA whether or not each Employee is still an employee of the Company as of such date. Within five business days of receipt of such information, SOA shall pay the pro-rata shares as set forth on Exhibit E set forth on Exhibit E less the amounts required for Tax Withholding to the Employee employed by the Company as of the applicable date. If a Key Employee is not an employee of the Company as of a date set forth on Exhibit E on which a AR Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.

      (ii)    An amount equal to 55.9006% of the AR Payment shall be paid to the Employees as described in this Section 2(g)(ii). Such amounts shall be paid to the Employees in their pro-rata shares as set forth on Exhibit F after deduction of the Tax Withholding with respect to such payment provided that each such Employee is an employee of the Company as of the date set forth on Exhibit F with respect to the AR Payment.. DJMMB LLC shall notify SOA whether or not each Employee is still an employee of the Company as of the date set forth on Exhibit F. Within five business days of receipt of such information, SOA shall pay the pro-rata shares as set forth on Exhibit F less the amounts required for Tax Withholding to the Employee employed by the Company as of the applicable date. If an Employee is not an employee of the Company as of a date set forth on Exhibit F on which a AR Payment is due, such payment shall be forfeited and reallocated as set forth in 2(i) below.

      (h)    Except for its obligations to pay the Guaranteed Payment, SOA shall only be required to pay the Deferred Payment (in excess of the amounts released from the Escrow Account as set forth in Sections 2(d) and 2(f) above) and the AR Payment actually received from Zensar and does not represent or guarantee that any of the performance conditions required for payment of the Deferred Purchase Price or AR Payment will be achieved or any amount of Deferred Purchase Price or AR Payment will be paid by Zensar pursuant to the Purchase Agreement.

**Reallocation of Payments**

      (i) Any payments not paid to an Equity Employee, Key Employee or Employee under this Agreement because such individual is not an employee of the Company as of the

9

applicable date, shall be paid to the Key Employees who were employees of the Company at the time such payment was originally scheduled to be paid to the former employee, allocated equally among such Key Employees and less the deduction of the Tax Withholding, if any, with respect to such payment. Such payments shall be made by the Escrow Agent or SOA, as applicable at the time the original payment was scheduled to be paid. After all payments have been made pursuant to this Section 2 and reallocated as provided in the previous sentence, any amount remaining in the Escrow Account shall be distributed to DJMMB LLC.

3.    <u>Equity Employee Acknowledgement</u>. DJMMB LLC and the Equity Employees represent and warrant that (a) all of the Equity Employees have executed the Operating Agreement, (b) the Equity Employees acknowledge and agree that certain payments pursuant to this Agreement shall be made to DJMMB LLC pursuant to this Agreement and not to the Equity Employees, (c) the Operating Agreement provides for the distribution of the amounts received pursuant to the Agreement to the Equity Employees and, (d) the Equity Employees acknowledge and agree that they shall look to DJMMB LLC and not to SOA or ThoughtDigital for the payment of certain amounts to which they may be entitled in connection with this Agreement which are made to DJMMB LLC as set forth in this Agreement. SOA shall be entitled to rely on any document executed by Didier Steven on behalf of DJMMB LLC as being duly authorized and approved by DJMMB LLC without further investigation. The Equity Employees agree that they will not amend the Operating Agreement in any manner that will affect the representations provided in this Section 3. DJMMB LLC and the Equity Employees represent and warrant that they have no verbal or written agreements with any of the Employees related to any amounts to be paid to such Employees in connection with the transactions contemplated by the Purchase Agreement other than as described in this Agreement.

4.    <u>No Separate Indemnity by Employees</u>. Other than the Escrow Adjustment Amount and as set forth in Section 3 above and Section 10 below, the Key Employees and Employees shall not be required to provide any additional indemnification with respect to the transactions contemplated by the Purchase Agreement.

5.    <u>Release</u>

(a)    In consideration of the obligations of SOA and ThoughtDigital as set forth in this Agreement and conditioned upon payment by SOA of the Closing Payment and deposit of the Guaranteed Payment in the Escrow Account, each of the Key Employees, on their own behalf and on behalf of each of their representatives, heirs, successors and assigns, and DJMMB LLC and each of its representatives, members, managers, directors, agents, affiliates, successors and assigns do hereby waive, release, acquit and forever discharge SOA and ThoughtDigital, and each of their respective affiliates, subsidiaries, divisions and related companies, and the past, present and future employees, agents, attorneys, officers, directors, shareholders, members, managers partners, heirs, executors, administrators, insurers, and successors and assigns of all of the foregoing (all hereinafter referred to as  "<u>SOA Released Parties</u>"), from and against any and all claims, rights, demands, actions, obligations, liabilities and causes of action, whether asserted or unasserted,  of any and every kind,  nature and character whatsoever, whether based on

10

contract, tort, statutory or other legal or equitable theory of recovery, known or unknown, that DJMMB LLC and each of the Key Employees may now have or has ever had against the SOA Released Parties, or any of them, including but not limited to those arising from or in any way connected with or related to:

(i)    Key Employee's employment relationship with ThoughtDigital and the termination of that relationship including, but not limited to, wrongful discharge of employment and discrimination;

(ii)    Key Employee's right to purchase, receipt or ownership of shares of stock of SOA (or options therefor), including, without limitation, any claims for fraud, misrepresentation, breach of fiduciary duty, breach of duty under applicable state corporate law, breach of contract and securities fraud under any state or federal law;

(iii)    breach of contract, both express and implied; breach of a covenant of good faith and fair dealing, both express and implied, negligent or intentional infliction of emotional distress; negligent or intentional misrepresentation; negligent or intentional interference with contract or prospective economic advantage; negligence; and defamation;

(iv)    any and all claims for violation of any federal, state or municipal statute, including, but not limited to, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act of 1990, the Fair Labor Standards Act, the Employee Retirement Income Security Act of 1974, The Worker Adjustment and Retraining Notification Act, Older Workers Benefit Protection Act;

(v)    any claim for any loss, cost, damage, or expense arising out of any dispute over the non-withholding or other tax treatment of any of the payments received by DJMMB LLC and the Key Employees as a result of this Agreement; and

(vi)    any and all claims for attorneys' fees and costs.

(b)    Notwithstanding the foregoing, this release does not extend to any payments or benefits receivable under this Agreement, or obligations incurred or specified under this Agreement, or any claims that are not waivable under applicable law, including indemnification claims.  SOA acknowledges that the Equity Employees are stockholders of SOA and will continue to have rights and privileges as holders of outstanding stock of the Company, subject to terms of SOA's Certificate of Incorporation, bylaws and any agreements entered into in connection with the issuance of such stock.

(c)    DJMMB LLC and the Key Employees understand and agree that, other than as set forth in Section 5(b), this Agreement is a full and final release covering all known and

unknown and unanticipated injuries, debts, claims or damages that have arisen or may have arisen against the SOA Released Parties prior to the Effective Date. The Key Employees and DJMMB LLC further acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those which they now know or believe to be true, but it is their intention hereby, fully and finally and forever, to settle and to release any and all matters, disputes and differences, known or unknown, suspected or unsuspected, that do now exist, may exist or heretofore have existed.

        (d)    DJMMB LLC and Key Employee agree neither to file nor to encourage or knowingly permit another to file any claim, charge, grievance, complaint or action for any sort against the SOA Released Parties concerning any claim released pursuant to this Agreement. If DJMMB LLC or any of the Key Employees have previously filed any such claim, they each agree to take all reasonable steps to cause it to by promptly dismissed or withdrawn with prejudice.

      6.    <u>Indemnification by SOA.</u>

        (a)    SOA shall indemnify each Key Employee in the event that such Key Employee is or becomes or is threatened to be made a party to any action or proceeding, whether civil or criminal, by reason of the fact that such Key Employee or such Key Employee's testator or intestate is or was an employee or officer of SOA, or served at the request of SOA as an officer or agent of any other corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, against judgment, fines, penalties, amounts paid in settlement and reasonable out of pocket expenses, including attorneys' fees, reasonably incurred in connection with such action or proceeding, or any appeal therein, provided that no such indemnification shall be made in the following circumstances (i) the action or proceeding is initiated by such Key Employee against SOA or any director or officer of the SOA unless SOA has joined in or consented to the initiation of such claim; (ii) the action or proceeding is made on account of a Key Employee's conduct which constitutes a breach of such Key Employee's duty of loyalty to SOA or its stockholders or is an act or omission not in good faith or which involves misconduct or a violation of the law; or (iii) if indemnification is prohibited by applicable law.

        (b)    SOA shall advance or promptly reimburse upon request by a Key Employee entitled to indemnification pursuant to Section 6(a) for out of pocket expenses, including attorneys' fees, reasonably incurred in defending any action or proceeding in advance of the final disposition thereof upon receipt of an undertaking by such Key Employee to repay such amount if such Key Employee is ultimately found not to be entitled to indemnification or, where indemnification is granted, to the extent the expenses so advanced or reimbursed exceed the amount to which such Key Employee is entitled.

        (c)    Within 30 days after receipt by a Key Employee of notice of the commencement of a claim for which such Key Employee may be entitled to indemnification pursuant to Section 6(a), such Key Employee will, if a claim in respect thereof is to be made

against SOA under this Agreement, submit to SOA a written notice identifying the proceeding. With respect to any such claim as to which a Key Employee notifies SOA of the commencement thereof SOA will be entitled to participate therein at its own expense and except as otherwise provided below, to the extent that it may wish, SOA jointly with any other indemnifying party similarly notified will be entitled to assume the defense thereof, with counsel selected by the Board of Directors of SOA and satisfactory to such Key Employee. After notice from SOA to such Key Employee of its election to assume the defense thereof, SOA will not be liable to such Key Employee under this Agreement for any legal or other expenses subsequently incurred by such Key Employee in connection with the defense thereof other than reasonable out of pocket costs of investigation or as otherwise provided below.  Such Key Employee shall have the right to employ its own counsel in such action, suit or proceeding, but the fees and out of pocket expenses of such counsel incurred after notice from SOA of its assumption of the defense thereof shall be at the expense of such Key Employee unless (i) the employment of counsel by such Key Employee has been authorized by SOA, (ii) there may be a conflict of interest between SOA and such Key Employee in the conduct of the defense of such action, or (iii) SOA shall not in fact have employed counsel to assume the defense of such action, in each of which cases the fees and out of pocket expenses of counsel shall be at the expense of SOA.  SOA shall not be entitled to assume the defense of any claim brought by or on behalf of the SOA or as provided for in clause (ii) above.  SOA shall not be liable to indemnify any Key Employee under this Agreement for any amounts paid in settlement of any action or claim effected without its written consent. SOA shall not settle any action or claim in any manner which would impose any unreimbursed sanction on any Key Employee without such Key Employee's written consent.  Neither SOA nor any Key Employee will unreasonably withhold or delay their consent to any proposed settlement.

(d)    In the event of payment pursuant to this Section 6, SOA shall be subrogated to the extent of such payment to all of the rights of recovery of the Key Employee, who shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable SOA effectively to bring suit to enforce such rights.

(e)  SOA shall not be liable pursuant to this Section 6 to make any payment in connection with any claim made against any Key Employee to the extent such Key Employee has otherwise actually received payment (under an insurance policy or otherwise) of the amounts otherwise indemnifiable hereunder.

(f)    An Equity Employee shall not be entitled to indemnification with respect to any amounts required to be paid by DJMMB LLC pursuant to this Agreement (provided that any funds required to be paid by SOA to DJMMB LLC pursuant to this Agreement have been paid) and no Key Employee shall be entitled to indemnification with respect to any funds released to SOA from the Escrow Adjustment Amount

(g)    To the actual knowledge of SOA's present officers,   SOA is not aware of any facts that may give rise to a legal claim or possible litigation by SOA or  ThoughtDigital against any of the Employees or DJMMB LLC.

7.     <u>Governing Law; Consent to Personal Jurisdiction</u>. This Agreement shall be governed by the laws of the State of New York without reference to rules of conflicts of law. The Parties shall attempt to settle all disputes arising in connection with this Agreement through good faith consultation.  In the event no agreement can be reached on such dispute within fifteen (15) days after notification in writing by any of the Parties to the others concerning such dispute, the dispute shall be settled by binding arbitration to be conducted in New York, New York  in accordance with the rules of the American Arbitration Association by one arbitrator mutually agreed upon by the Parties.  The arbitrator will apply New York  law, without reference to rules of conflicts of law, to the resolution of any dispute.  The arbitration decision shall be final, conclusive and binding on the Parties and any arbitration award or decision may be entered in any court having jurisdiction. **The Parties hereby waive any rights they may have to trial by jury in regard to claims subject to arbitration.**  This section will not prevent the Parties from seeking injunctive relief (or any other provisional remedy) from any court having jurisdiction over the Parties and the subject matter of their dispute relating to the obligations under this Agreement.

8.     <u>No Assignment</u>. All terms of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective legal representatives of the parties hereto, or their respective successors and assigns; provided that Key Employees and DJMMB LLC may not assign this Agreement. This Agreement may be assigned by SOA and ThoughtDigital to a corporation controlling, controlled by or under common control with SOA or a corporation that acquires all or substantially all of the assets of SOA, without the consent of the Key Employees or DJMMB LLC, provided such assignee(s) assumes all of SOA and ThoughtDigital obligations hereunder.

9.     <u>Entire Agreement</u>. This Agreement contains the entire agreement and understanding of the parties and supersedes all prior discussions, agreements and understandings relating to the subject matter hereof. This Agreement may not be changed or modified, except by an agreement in writing executed by SOA, ThoughtDigital and on behalf of DJMMB LLC and the Key Employees by either Didier Steven, Joseph Ung or Michael Crawford.

10.     <u>Allocation of Payments</u>.  With respect to the payments to the Equity Employees described on Exhibit D, the Parties acknowledge and agree that such payments represent payment for release and  settlement of claims and no taxes shall be withheld by ThoughtDigital or SOA with respect to those amounts. With respect to all other payments to the Key Employees and with respect to the payments to the Employees, the Parties acknowledge and agree that such payments represent compensation for services rendered by such Employees and therefore SOA or ThoughtDigital, as applicable, shall withhold any employee income, employment or other taxes that are required to be withheld (the "Tax Withholding") with respect to such payments each time any payment is made pursuant to this Agreement. DJMMB LLC shall provide to SOA a current W-4 for each Key Employee and Employee for each tax year.  SOA shall not be obligated to make any payment pursuant to this Agreement or instruct the Escrow Agent to do so unless it has received a current W-4 for the Key Employee or Employee, receiving such payment. The Equity Employees shall indemnify SOA and ThoughtDigital for any taxes, assessed on either SOA or ThoughtDigital for failure to withhold any taxes that may be

14

determined should have been withheld with respect to the payments described in the first sentence of this Section 10, except for interest and penalties.

11.   Counterparts. This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned.

12.   Voluntary Execution of Agreement. This Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the Parties hereto, with the full intent of releasing all claims. The Parties acknowledge that:

    (a)   They have had adequate time to read this Agreement;

    (b)   They have been represented in the preparation, negotiation, and execution of this Agreement by legal counsel of their own choice or that they have voluntarily declined to seek such counsel;

    (c)   They understand the terms and consequences of this Agreement and of the releases it contains; and

    (d)   They are fully aware of the legal and binding effect of this Agreement.

13.   Notices. All notices and other communications required or permitted between or among the Parties shall be in writing and shall be either hand delivered in person, sent by facsimile, sent by certified or registered first-class mail, postage pre-paid, or sent by nationally recognized express courier service. Such notices, consents and other communications shall be effective upon receipt if hand delivered or sent by facsimile, three business days after mailing if sent by mail, and one business day after dispatch if sent by express courier, to the following addresses, or such other addresses as any Party may notify the other Parties in accordance with this Section 13:

> SOA Software, Inc.
> Attn: Chief Financial Officer
> 12100 Wilshire Blvd, Ste. 1800
> Los Angeles, CA 90025
> Phone: 310 570 4168
> Fax:    310 820 8524
>
> DJMMB, LLC
> Attn: ——————————————Didier Steven
> [Address]30 Werden Road
> [Address]Becket, Mass 01223
> Phone: 917-685-8920
> Fax:

~~IF TO DJMMB LLC :~~

WITH A COPY TO:          Victor J. DiGioia
                        Goldstein & DiGioia, LLP
                        45 Broadway
                        New York, NY 10006

14.    <u>Severability</u>.  In the event any provision of this Agreement becomes or is declared by a court or tribunal of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without such provision.

16

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth herein.

**SOA Software, Inc.**                                    **Key Employees:**

By:_____              _____

_____, President            Didier Steven

                                        _____

                                        Joseph Ung

                                        _____

                                        Mike Crawford

                                        _____

                                        Ben Pastro

                                        _____

                                        Mark Petruzzi

**DJMMB, LLC**

By:_____

Didier Stevens, Manager

17

# EXHIBIT A

## LIST OF EMPLOYEES

| Employee Name |
| --- |
| Sean Walsh |
| Edward Deignan |
| Kevin Beyer |
| Heidi Zee |
| Sam Strevens |
| David McNeil |
| Kevin Schlitt |
| Ron Gendron |
| Gary Patterson |
| Michael Wyszynski |
| John Lee |
| John Doscher |

**EXHIBIT B**

**OPERATING AGREEMENT**

**EXHIBIT C**

**ESCROW AGREEMENT**

**EXHIBIT D**

| Employee Name | Closing Payment | TD NWC Payment Percentage | TD Escrow Payment Max Amount* | TD Escrow Payment Percentage | 2008 Guaranteed Deferred Payment | 2009 Guaranteed Deferred Payment |
|---|---|---|---|---|---|---|
| Didier Steven | $599,424.39 | 15.7495% | $30,601.28 | 16.5412% | $117,949.14 | $176,923.71 |
| Joseph Ung | $922,656.71 | 24.2422% | $48,224.23 | 26.0672% | $191,465.83 | $287,198.75 |
| Mike Crawford | $328,193.03 | 8.6230% | $16,981.80 | 9.1794% | $53,731.84 | $79,871.65 |
| Mark Petruzzi | $119,513.95 | 3.1401% | $5,561.48 | 3.0062% | $25,669.24 | $38,156.98 |
| Totals | $1,969,788.08 | 51.7548% | $101,368.79 | 54.7939% | $388,816.05 | $582,151.09 |
| Employment Date | Not Applicable | Not Applicable | June 15, 2008 | June 15, 2008 | December 31, 2007 | December 31, 2008 |

* This amount reflects the maximum amount which will be paid out if no escrow claims are made. To the extent that any escrow claims are made, this amount will be proportionately reduced.

**EXHIBIT E**

| Employee Name | Closing Payment | TD NWC Payment Percentage | TD Escrow Payment Max Amount* | TD Escrow Payment Percentage | 2008 Guaranteed Deferred Payment | 2009 Guaranteed Deferred Payment |
|---|---|---|---|---|---|---|
| Didier Steven | None | None | None | None | None | None |
| Joseph Ung | $87,078.77 | 2.2879% | $4,551.32 | 2.4602% | None | None |
| Mike Crawford | $619,855.16 | 16.2863% | $32,073.37 | 17.3370% | $86,074.36 | $129,837.64 |
| Mark Petruzzi | $312,073.77 | 8.1995% | $14,522.09 | 7.8498% | $65,646.25 | $98,816.25 |
| Ben Pastro | $405,270.46 | 10.6482% | $18,698.45 | 10.1073% | $92,248.87 | $138,373.30 |
| Totals | $1,424,278.16 | 37.4219% | $69,845.22 | 37.7542% | $243,969.47 | $367,027.19 |
| Employment Dates | Not Applicable | Not Applicable | June 15, 2008 | June 15, 2008 | December 31, 2007 | December 31, 2008 |

| Employee Name | 2008 Contingent Payment Maximum* | Pro-rata Shares - 2008 Contingent Payment | 2009 Contingent Payment Maximum* | Pro-rata Shares - 2009 Contingent Payment | AR Payment Maximum* | Pro-rata Shares – AR Payment |
|---|---|---|---|---|---|---|
| Didier Steven | $55,495.64 | 21.3445% | $  83,243.47 | 21.3445% | $27,666.66 | 5.7281% |
| Joseph Ung | $74,298.81 | 28.5765% | $ 111,448.21 | 28.5765% | $27,666.66 | 5.7281% |
| Mike Crawford | $49,121.09 | 18.8927% | $  73,681.64 | 18.8927% | $127,666.67 | 26.4320% |
| Mark Petruzzi | $23,651.39 | 9.0967% | $  35,477.09 | 9.0967% | $15,000.00 | 3.1056% |
| Ben Pastro | $19,763.11 | 7.6012% | $29,644.68 | 7.6012% | $15,000.00 | 3.1056% |
| Totals | $222,330.05 | 85.5116% | $333,495.08 | 85.5116% | $213,000.00 | 44.0994% |
| Employment Dates | December 31, 2007 | December 31, 2007 | December 31, 2008 | December 31, 2008 | August 31, 2007 | August 31, 2007 |
| | | | | | | |

* This amount reflects the maximum amount which will be paid out if no escrow claims and the full deferred purchase price target for such year and account receivable payments are received, as applicable. To the extent that any escrow claims are made or if the full amount of the deferred purchase price or accounts receivable payment is not received, this amount will be proportionately reduced.

22

**EXHIBIT F**

| Employee Name | Closing Payment | TD Escrow Payment Max Amount* | TD Escrow Payment Percentage | 2008 Guaranteed Deferred Payment | 2009 Guaranteed Deferred Payment |
|---|---|---|---|---|---|
| Sean Walsh | $188,846.70 | $9,939.30 | 5.3726% | None | None |
| Edward Deignan | $5,714.98 | $300.79 | 0.1626% | $  1,323.85 | $  1,985.78 |
| Kevin Beyer | $57,619.40 | $401.02 | 0.2168% | $  20,789.81 | $ 26,184.71 |
| Heidi Zee | $59,524.25 | $501.28 | 0.2710% | $  21,231.09 | $ 26,846.64 |
| Sam Strevens | $61,429.10 | $601.53 | 0.3252% | $  21,672.38 | $ 27,508.56 |
| David McNeil | $7,031.55 | $370.08 | 0.2000% | $  13,537.00 | $ 20,305.50 |
| Kevin Schlitt | $18,479.77 | $972.62 | 0.5257% | $  13,537.00 | $ 20,305.50 |
| Ron Gendron | $6,644.00 | $349.68 | 0.1890% | $  13,537.00 | $ 20,305.50 |
| Gary Patterson | $6,644.00 | $349.68 | 0.1890% | $  13,537.00 | $ 20,305.50 |
| Michael Wyszynski | None | None | None | $  9,024.67 | $ 13,537.00 |
| John Lee | None | None | None | $  4,512.33 | $  6,768.50 |
| John Doscher | None | None | None | $  4,512.33 | $  6,768.50 |
| Total | $411,933.76 | $15,039.18 | 7.4519% | | |
| Employment Date | May 7, 2007 and October 15, 2007 | June 15, 2008 | June 15, 2008 | December 31, 2007 | December 31, 2008 |

* This amount reflects the maximum amount which will be paid out if no escrow claims and the full deferred purchase price target for such year and account receivable payments are received, as applicable. To the extent that any escrow claims are made or if the full amount of the deferred purchase price or accounts receivable payment is not received, this amount will be proportionately reduced.

23

**EXHIBIT F - Continued**

| Employee Name | 2008 Contingent Payment Maximum* | Pro-rata Shares - 2008 Contingent Payment | 2009 Contingent Payment* | Pro-rata Shares - 2008 Contingent Payment |
|---|---|---|---|---|
| Edward Deignan | $ 465.14 | 0.1789% | $ 697.71 | 0.1789% |
| Kevin Beyer | $ 3,791.01 | 1.4581% | $ 5,686.52 | 1.4581% |
| Heidi Zee | $ 3,946.06 | 1.5177% | $ 5,919.09 | 1.5177% |
| Sam Strevens | $ 4,101.11 | 1.5773% | $ 6,151.66 | 1.5773% |
| David McNeil | $ 4,756.24 | 1.8293% | $ 7,134.37 | 1.8293% |
| Kevin Schlitt | $ 4,756.24 | 1.8293% | $ 7,134.37 | 1.8293% |
| Ron Gendron | $ 4,756.24 | 1.8293% | $ 7,134.37 | 1.8293% |
| Gary Patterson | $ 4,756.24 | 1.8293% | $ 7,134.37 | 1.8293% |
| Michael Wyszynski | $ 3,170.83 | 1.2195% | $ 4,756.24 | 1.2195% |
| John Lee | $ 1,585.41 | 0.6098% | $ 2,378.12 | 0.6098% |
| John Doscher | $ 1,585.41 | 0.6098% | $ 2,378.12 | 0.6098% |
| Totals | $37,669.95 | 14.4884% | $56,504.93 | 14.4884% |
| Employment Date | December 31, 2007 | December 31, 2007 | December 31, 2008 | December 31, 2008 |

| Employee Name | AR Payment* | Pro-rata Shares – AR Payment | Pro-rata Shares – Net Working Capital Adjmt. |
|---|---|---|---|
| Sean Walsh | None | None | 4.9618% |
| Edward Deignan | $ 10,000.00 | 2.0704% | 0.1502% |
| Kevin Beyer | $ 30,000.00 | 6.2112% | 1.5139% |
| Heidi Zee | $ 30,000.00 | 6.2112% | 1.5640% |
| Sam Strevens | $ 30,000.00 | 6.2112% | 1.6140% |
| David McNeil | $ 30,000.00 | 6.2112% | 0.1847% |
| Kevin Schlitt | $ 30,000.00 | 6.2112% | 0.4855% |
| Ron Gendron | $ 30,000.00 | 6.2112% | 0.1746% |
| Gary Patterson | $ 30,000.00 | 6.2112% | 0.1746% |
| Michael Wyszynski | $ 15,000.00 | 3.1056% | None |
| John Lee | $ 15,000.00 | 3.1056% | None |
| John Doscher | $ 20,000.00 | 4.1408% | None |
| Totals | $270,000.00 | 55.9006% | 10.8233% |
| Employment Date | August 31, 2007 | August 31, 2007 | May 7, 2007 |

* This amount reflects the maximum amount which will be paid out if no escrow claims and the full deferred purchase price target for such year and account receivable payments are received, as applicable. To the extent that any escrow claims are made or if the full amount of the deferred purchase price or accounts receivable payment is not received, this amount will be proportionately reduced.

24

# EXHIBIT

# B

# EMPLOYMENT AGREEMENT

This Employment Agreement ("**Agreement**") is entered into by and between Zensar TD, LLC, a Delaware limited liability company (the "**Company**") and Mark Petruzzi ("**Employee**"), as of February ___, 2007 (the "**Effective Date**"). The Company and Employee may also be referred to herein individually as a "**Party**" or collectively as the "**Parties**".

ThoughtDigital, LLC ("ThoughtDigital") and SOA Software, Inc. ("SOA") contributed the assets owned by them related to the business of technology applications, consulting and software resale, and integration of Enterprise Resource Planning applications developed by Oracle Corporation (the "**Business**") to the Company. Zensar Technologies, Inc., a California corporation ("Zensar") has acquired (the "Acquisition") all of the membership interests of the Company pursuant to that certain membership interest purchase agreement, (the "**Membership Interest Purchase Agreement**") dated February ___, 2007, between ThoughtDigital, SOA Software, Inc. ("**SOA**") and Zensar. Employee was previously employed by ThoughtDigital, and the Company has agreed to employ Employee after closing of the Acquisition as the Company's Assistant Vice President and Employee has agreed to accept such employment, subject to the terms and conditions of this Agreement and the Membership Interest Purchase Agreement.

In connection with the Acquisition, Employee, ThoughtDigital and SOA have entered into a Compensation Agreement and Release (the "Compensation Agreement and Release") of even date, pursuant to which DJMMB LLC ("DJM"). a limited liability company of which Employee is a member, is entitled to a portion of the proceeds from the Acquisition received by SOA and ThoughtDigital (the "Closing Payment") on the closing of the Acquisition.

Nothing in this Agreement shall create a duty or obligation on behalf of the Company with respect to the Compensation Agreement and Release. The Company and Employee agree that the execution and performance of this Agreement shall not, in any manner, create an assumption of liability or responsibility on the part of the Company for any debt or obligation owed by SOA or ThoughtDigital to Employee, including but not limited to the Closing Payment.

NOW THEREFORE, in consideration of the covenants and agreements contained herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

## I. EMPLOYMENT AND EMPLOYMENT TERM

The Company hereby employs Employee as the Company's Assistant Vice President and Employee hereby accepts such employment, upon the terms and conditions hereinafter set forth. Employee shall have and fully perform such reasonable duties and responsibilities that the Company may assign to him from time to time. The Company shall provide reasonable support, including administrative and secretarial support, computers, telephones, space and facilities, and such other support as is suitable to the character of his position and necessary or appropriate for

remedies, including an action for damages, which the Company may have by reason of a violation of the provisions Sections V, VI or VII of this Agreement.

The Company shall have the right and remedy to require Employee to account for and to pay over to the Company all compensation, profits, moneys, accruals, increments, or other benefits derived or received by Employee as the result of any action constituting a breach of Sections V, VI or VII of this Agreement, all in addition to the damages set forth above.

It is the expressed intent of the Parties that in the event any restrictive covenant contained in Sections V, VI or VII of this Agreement shall be adjudicated by any court of competent jurisdiction to be partially or totally invalid or unenforceable because of an over-broad scope or for any other reason, such covenant shall be deemed modified to the extent necessary to render it valid and enforceable under the laws of such jurisdiction, or shall be excised from this Agreement, as circumstances may require, and said restrictive covenant shall then be enforced to the maximum extent and scope permitted by law.

## IX. MISCELLANEOUS.

### A. Waiver.
No waiver of any breach of any term or provision of this Agreement shall be effective unless in writing and signed by the party waiving the breach and, then, only to the specific provision, extent and instance so provided.

### B. Modification.
This Agreement may not be amended or modified other than by a written agreement executed by Employee and the Company.

### C. Savings Clause.
If any provision of this Agreement or the application thereof is held invalid, the invalidity shall not affect other provisions or applications of the Agreement which can be given effect without the invalid provisions or applications and to this end the provisions of this Agreement are declared to be severable. To the extent that any court holds that any of the covenants set forth in this Agreement are unenforceable because they are unreasonable as to scope and/or duration, then the parties intend that such covenant(s) be reduced in scope and/or duration to the extent required to be held enforceable.

### D. Employee's Representations and Warranties.
Employee represents and warrants that (i) Employee is free to enter into this Agreement and that Employee is not subject to any obligations or disabilities which will or might prevent or interfere with keeping or performing all of the agreements, covenants and conditions to be kept or performed; (ii) the execution of this Agreement by Employee and the performance of Employee's obligations hereunder will not violate or be in conflict with any fiduciary or other duty, instrument, agreement, arrangement or understanding to which Employee is a party or by which Employee is or may be bound or subject; and (iii) Employee is not a party to any instrument, agreement, arrangement or understanding with any person, other than the

8

Company, requiring or restricting the use or disclosure of any confidential information or the provision of any employment, consulting or other services.

**E. Complete Agreement.**

This Agreement and the exhibits attached hereto constitute and contain the entire agreement and final understanding concerning Employee's employment and the other subject matters addressed. The Parties intend this Agreement as a complete and exclusive statement of the terms of their agreement, and this Agreement supersedes and replaces all prior negotiations and agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof.

**F. Governing Law, Jurisdiction and Venue.**

This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of New York without regard to principles of conflict of laws. In any action between the Company and Employee arising out of or relating to this Agreement: (a) each of the Company and Employee irrevocably and unconditionally consents and submits to the exclusive jurisdiction and venue of the state and federal courts located in the State of New York; (b) if any such action is commenced in a state court, then, subject to applicable law, Employee will not object to the removal of such action to any federal court located in the New York.

**G. Construction.**

Each party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same shall not be construed against any party on the basis that the party was the drafter. The captions of this Agreement are not part of the provisions hereof and shall have no force or effect.

**H. Notices.**

All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered or if mailed by registered or certified mail, postage prepaid, and if addressed to Employee, at the address set forth in the Company's records at such time of delivery or at such other address that the Employee may provide, and if to the Company, to: Zensar Technologies, Inc., Attn: Chief Executive Officer. Either party may change the address at which notice shall be given by written notice given in the above manner.

All notices and communications shall be deemed to have been received on (A) if delivered by personal service, the date of delivery thereof; (B) if delivered by a nationally recognized overnight courier service, on the first business day following deposit with such courier service; or (C) on the third business day after the mailing thereof via certified mail. Notwithstanding the foregoing, any notice of change of address shall be effective only upon receipt.

The current addresses of the parties are as follows:

IF TO THE COMPANY:      Zensar Technologies, Inc.
                             Attn: Nitin Parab
                             1415 West 22nd Street, Suite 925
                             Oak Brook, Illinois 60523